**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TIFFANY BROOKE HERNANDEZ,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:21-cv-00413** |
| **v.** | ) | **District Judge Richardson** |
| | ) | **Magistrate Judge Frensley** |
| **KILOLO KIJAKAZI,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Record. Docket No. 25. Plaintiff has filed an accompanying Memorandum. Docket No. 26. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 27.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED.**

## I. INTRODUCTION

Plaintiff filed her applications for DIB on November 22, 2017, and for SSI on January 22, 2018, alleging that she had been disabled since November 15, 2017, due to depression, levo

1

scoliosis, anxiety, severe back pain, tachycardia, heart problems, bipolar [disorder], hypertension, seizures, fainting spells, neuropathy, stomach problems, HBP [high blood pressure], and PTSD [posttraumatic stress disorder]. *See, e.g.* Docket No. 23, Attachment ("TR"), p. 175-76, 423. Plaintiff's applications were denied both initially (TR 175-76) and upon reconsideration (TR 229-30). Plaintiff subsequently requested (TR 248-55) and received (TR 36-60) a hearing. Plaintiff's hearing was conducted on April 21, 2020, by Administrative Law Judge ("ALJ") Shannon H. Heath. TR 36. Plaintiff and vocational expert ("VE"), Catrinya Dunn, appeared and testified. *Id.*

On May 8, 2020, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13-28. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since November 15, 2017, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: congenital L3-4 fusion; pseudotumor cerebri; history of seizures; posttraumatic stress disorder (PTSD); major depressive disorder; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally balance, stoop, kneel, crouch, and crawl;

2

occasionally climb ramps/stairs, but not climb ladders, ropes, or scaffolds; cannot work around unprotected heights or unguarded moving machinery; must avoid commercial driving; can perform simple, routine, and repetitive tasks; cannot interact with the general public, can adapt to occasional changes within the workplace and maintain concentration, persistence, and pace in 2-hour intervals with customary breaks spread throughout the day; and should avoid production piece rate work.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on August 10, 1988 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 19, 21, 26, 27.

On July 14, 2020, Plaintiff timely filed a request for review of the hearing decision. TR 8-12. On March 29, 2021, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

3

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at

4

229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

5

his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5)  The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> number of jobs in the national economy which the claimant could
> perform, given his or her age, experience, education, and residual
> functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir.

1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*,

923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v.*

*Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot

be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases

where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must

rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's

individual vocational qualifications to perform specific jobs, which is typically obtained through

vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779

(6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages

four and five above, the Commissioner is required to consider the combined effect of all the

claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere.

*See* 42 U.S.C. § 423(d)(2)(B).

**C. Plaintiff's Statement of Errors**

Plaintiff contends that:

1. The ALJ's residual functional capacity finding is not supported by substantial evidence because there is no logical bridge between the evidence and the residual functional capacity;

2. The ALJ misjudged Plaintiff's credibility by not evaluating Plaintiff's subjective complaints of pain;

3. The ALJ did not meet the level of required specificity in explaining which pieces of evidence the ALJ accepted and rejected; and

4. The ALJ failed to properly weigh the evidence provided by Plaintiff's treating physicians and other medical sources.

Docket No. 26, pp. 11, 14, 16-17, 22. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

8

## 1. Substantial Evidence

Plaintiff contends that the ALJ failed to consider the entire record and, accordingly, lacked substantial evidence to support a residual functional capacity of light work with additional postural and environmental limitations. Docket No. 26, p. 11. First, Plaintiff argues that under 20 C.F.R. § 404.1529(c), the ALJ did not develop the record by failing to consider required "other evidence" in formulating the RFC under part two of the test in 20 C.F.R. § 404.1529(c).[2] Docket No. 26, p. 13. Second, Plaintiff contends that the ALJ excluded "outcome-determinative limitations" that, if included, would result in a new RFC. *Id*. at 11.

Defendant responds that the ALJ appropriately considered the entire record. Docket No. 27, p. 12. Defendant argues that the ALJ developed the entire record by including Plaintiff's medical treatment records, Plaintiff's statements, and treating professionals' opinion evidence. *Id*. at 5-7, 10-12. Defendant ultimately contends that the ALJ properly considered "other evidence," determined that the evidence weighed against Plaintiff, and delivered a corresponding RFC. *Id*. at 3.

As noted above, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her*, 203 F.3d at 389, *citing Richardson*, 402 U.S. at 401. "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell.*, 105 F.3d at 245, *citing Consol. Edison Co.,* 305 U.S. at 229 (1938); *see also Gentry*, 741 F.3d at 722.[3]

---

[2] Other evidence includes: (1) daily activities, (2) location, duration, frequency, and intensity of pain and other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken, (5) treatment, other than medication; and (6) any other factors concerning her functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c).

[3] *See* pp. 4-5 of this recommendation for a full explanation of the "Substantial Evidence" standard.

The Court will specifically address the substantial evidence the ALJ relied on while discussing the ALJ's development of the record and the ALJ's RFC finding.

## A. ALJ's Development of the Record

First, Plaintiff claims that the ALJ's findings lacked substantial evidence because the ALJ failed to fully develop the record. Docket No. 26, p. 12. Plaintiff argues that the ALJ "cherry-picked" certain evidence to include in her opinion. *Id*. Likewise, Plaintiff contends that the ALJ should have contacted Therapist Sharon Grosch or Roy M. John, M.D., to help resolve inconsistencies between the record and the treating physician's respective opinions. *Id*. at 20-21.

Defendant responds that the ALJ did not "cherry-pick" the evidence, but rather, the ALJ appropriately weighed the evidence in the record. Docket No. 27, pp. 12-13. Defendant further notes that the ALJ was under no duty to recontact medical personnel because the ALJ can resolve inconsistencies using evidence in the record. *Id*. at 9.

The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. *Johnson v. Sec'y of Health & Human Servs.,* 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence. *See, e.g., Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998). This is because there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision. *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

Although Plaintiff correctly asserts that the ALJ must fully develop the record, Plaintiff fails to show that the ALJ did not do so. The fifth finding in the "Findings of Fact and Conclusions

10

of Law" section of the ALJ's decision in the case at bar specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these were considered.  TR 21-26.  In her brief, Plaintiff only offers one instance of the ALJ's selectiveness regarding the evidence in the record. Docket No. 26, p. 16. Plaintiff argues that the ALJ disregarded Plaintiff's claims about "the necessary time off-task" needed for Plaintiff to recover from attacks. *Id*. at 17. However, the ALJ explicitly considered both Plaintiff's testimony that Plaintiff may pass out for two hours at a time or may sleep for days to recover from an anxiety attack. TR 22, 49-50. This reference demonstrates how the ALJ satisfactorily developed the record to include specific instances that Plaintiff claims the ALJ selectively ignored.

Plaintiff further argues that the ALJ failed to develop the record with additional evidence by not contacting Dr. John or Therapist Grosch. Docket No. 26, pp. 20-21. Despite Plaintiff's assertions, the ALJ had no duty to reach out to Dr. John or Therapist Grosch to develop the record beyond the evidence each treating professional had already provided. As Defendant correctly points out, 20 C.F.R. § 404.1520(b) and 20 C.F.R. § 416.920(b) permit, but do not require, an ALJ to recontact the treating physician or therapist. Docket No. 27, p. 9. 20 C.F.R. § 404.1520(b) and 20 C.F.R. § 416.920(b) allow ALJs to make factual findings with the evidence in the record, despite evidentiary inconsistencies.

It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support the Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with the Plaintiff's allegations.  This is within the ALJ's province.

### B.  Residual Functional Capacity ("RFC")

Plaintiff maintains that, had the ALJ properly incorporated all evidence within the record,

the ALJ would have found Plaintiff's RFC warranted a finding of "disabled." Docket No. 26, p. 14. Plaintiff argues that ALJ did not fully consider how Plaintiff's anxiety attacks would prevent Plaintiff from staying on task at work or even from showing up to work. *Id.*

Defendant responds that the ALJ did properly incorporate all evidence within the record. Docket No. 27, p. 10. Therefore, Defendant suggests the ALJ's RFC finding was supported by substantial evidence and must be upheld. *Id.* Specifically, Defendant cites to the ALJ's consideration of Dr. John's and Therapist Grosch's opinions (*Id.* at 5-7), conclusions drawn by state agency consultants (*Id.* at 7-8), and objective medical evidence regarding Plaintiff's mental and physical treatment (*Id.* at 10-11).

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

In considering the entire record, the ALJ cited multiple pieces of evidence to support her findings. TR 20. These portions largely include the string of record citations that Plaintiff has included in her brief. *See* Docket No. 26, pp. 14, 24. The ALJ must consider the record as a whole.

12

*Hurst*, 753 F. 2d at 519, *citing Allen,* 613 F. 2d at 145. However, "An ALJ need not discuss every piece of evidence in the record for [her] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x. 661, 665 (6th Cir. 2004). Here, the ALJ did not discuss every piece of evidence in the record, but after considering the entire record, the ALJ discussed many parts of the record as listed below.

Regarding Plaintiff's mental and physical examinations, the ALJ references Plaintiff's Function Reports (C1E, C6E, C11E) as well as Plaintiff's Office Treatment Records (C4F, C6F, C9F, C26F), Emergency Department Records (C10F, C27F, C28F), Medical Records (C25F, C29F, C30F, C33F, C24F), and other Hospital Records and Progress Notes (C15F, C21F, C35F). TR 397-404, 437-44, 462-75, 675-95, 701-15, 743-56, 757-857, 896-950, 1460-501, 1507-19, 1520-621, 1722-27, 1728-89, 1790-842, 1843-909, 1910-30, 1979-82, 2061-165. Collectively, these exhibits demonstrate the non-objective, "other evidence" that the ALJ considered as required by 20 C.F.R. § 404.1529(c).

After such consideration, the ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light work with postural and environmental limitations. TR 26. The ALJ explained:

> Mental examinations showed many normal presentations including normal affect, fluent speech, normal though content/perception, fully oriented, alert, cooperative, normal eye contact, satisfactory hygiene, appropriate attention, concentration intact, all areas of memory were intact, normal speech, coherent and logical, no suicidal ideation, normal thought content, normal appearance, normal grooming, euthymic mood, cognitive function intact, no hallucinations and no delusions.

TR 23.

In so finding, the ALJ considered Plaintiff's physical examinations from treating

Case 3:21-cv-00413   Document 28   Filed 06/09/22   Page 13 of 28 PageID #: 2365

physicians as well as hospital and other medical records. *Id.* Specifically, the ALJ stated:

> Despite allegations of debilitating symptoms, physical exams showed largely benign findings. She had normal musculoskeletal and neurological functioning including able to perform tandem gait, steady, Romberg sign negative, pinprick sensation intact, no focal weakness, no atrophy, no fasciculations, cranial nerves intact, normal deep tendon reflexes in the knees, full range of motion, no deformities, no edema, no erythema, negative straight leg raises, steady gait, no kyphosis, and no scoliosis.

*Id.* In tandem, the use of mental and physical examinations illustrates how the ALJ paid notice to Plaintiff's description of her symptoms, reviewed pertinent medical evidence, and weighed the evidence accordingly. TR 23-25. The ALJ thus had substantial evidence to support her finding that Plaintiff maintains a residual functional capacity to perform light work with additional postural and environmental limitations.

Moreover, while Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F. 2d 524 (6th Cir. 1992).

The ALJ determined that Plaintiff can perform light work given the activities that Plaintiff engages in. TR 24. The ALJ explained:

> The claimant also stated she could perform personal care, did not need any special reminders to take care of personal needs or grooming, can prepare some meals, does some cleaning, does some laundry, can ride in a car, shops by phone, shops by mail, can pay bills, can count change, can handle a savings account, can use a checkbook/money orders, does not have problems getting along with others, finishes what she starts, can follow written instructions, reads, watches television, spends time with her children, spends time with her roommate, goes to doctors' appointments, and gets along

14

with authority figures.

TR 24 (citation omitted). The record also contains examples of Plaintiff indicating that she sometimes drives herself, helps care for her children, and walks for exercise. TR 84, 462-75, 2213. But, Plaintiff argues that performing "transitory or sporadic daily activities" does not indicate Plaintiff's ability to perform light work. Docket No. 26, p. 24. Although engaging in such activities does not necessarily equate to performing light work, engaging in such activities provides substantial evidence for the ALJ to find Plaintiff retains the RFC to perform light work.[4] The ALJ indicates that Plaintiff undermined her own credibility because engaging in "fairly robust activities" suggests that Plaintiff "is not as limited as alleged." TR 24.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity, and ultimately determined that Plaintiff retained the RFC to perform light work with additional postural and environmental limitations. TR 26. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

Because the ALJ developed the evidence and adequately explained the reasons and basis for her conclusions, and because the ALJ's findings are supported by "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," substantial evidence exists, and the decision of the ALJ must stand.

## 2. Credibility and Subjective Complaints of Pain

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not appropriately address her subjective complaints of pain. Docket No. 26, pp. 13-14.

_____

[4] *See* "Findings of Fact and Conclusions of Law" #5 for the ALJ's full description of Plaintiff's RFC. TR 21.

Plaintiff insists that more weight be given to her subjective complaints of pain, especially the Function Report filled out by Plaintiff (TR 462-69) and Plaintiff's testimony from the ALJ hearing (TR 48-51). Docket No. 26, pp. 23-25.

Defendant responds that Plaintiff's subjective complaints of pain were inconsistent with other medical evidence but sufficient for the ALJ to reach a decision. Docket No. 27, p. 7. Defendant points out that the subjective complaints are only a single factor to consider in reaching a conclusion. *Id*. at 11. Defendant concludes that the fully developed, yet inconsistent, record weighs against the plaintiff. *Id*. at 12-13.

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x. 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful

16

employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that Plaintiff's subjective statements about her symptoms were not consistent with other evidence and medical evidence in the record. TR 23. The ALJ explained her rationale, "Despite allegations of debilitating symptoms, physical exams showed largely benign findings." TR 24. The ALJ continued, "Mental examinations showed many normal presentations...." *Id*. Both statements indicate that the ALJ considered Plaintiff's Function Report (TR 462-69) and testimony (TR 48-55) and compared that evidence with evidence produced from Plaintiff's trips to the hospital and doctors' offices.[5] The ALJ also notes that Plaintiff's conservative treatment measures were "somewhat effective in alleviating symptoms," suggesting that stronger treatment measures would be necessary to treat the alleged severity of

---

[5] *See* TR 675-95, 696-700, 701-15,743-56, 757-857, 858-68, 869-83, 884-91, 896-950, 1460-501, 1520-721, 1722-27, 1728-89, 1790-842, 1843-909, 1910-30, 1979-82, 1983-2060, 2061-165.

Plaintiff's pain. *Id*. And, as discussed above, the ALJ greatly considered Plaintiff's daily activities. TR 24.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 23-25. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

After assessing all of the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff maintained the residual functional capacity to perform light work with additional

18

postural and environmental limitations. TR 21. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision (TR 26); the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute substantial evidence. Additionally, the ALJ's decision demonstrates that she carefully considered the testimony of both Plaintiff and the VE. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that the plaintiff has not been under a disability since November 15, 2017, because Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b) with additional postural and environmental limitations. TR 21, 27. Because substantial evidence supports the ALJ's determination that Plaintiff is not under a disability as defined by the Social Security Act, the ALJ's decision must stand.

### 3. Required Specificity of ALJ's Decision

Plaintiff contends that the ALJ failed to articulate which portions of Plaintiff's testimony and medical opinion evidence she accepted and which she rejected, and that this failure constitutes grounds for reversal or remand. Docket No. 26, pp. 24-25.

Defendant responds that the ALJ is not required to discuss every piece of evidence used in reaching her decision. Docket No. 27, p. 12.

Despite Plaintiff's contention, Plaintiff fails to cite any support for the proposition that the

19

ALJ must specifically and comprehensively articulate exactly which pieces of testimony she accepts and/or rejects, and the Regulations do not so require. Rather, the Regulations simply require that the ALJ state "the findings of fact and the reasons for the decision." 20 CFR § 416.1453(a). As the Sixth Circuit has noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).

Plaintiff asserts that the ALJ does not "provide a meaningful rationale" as to why the ALJ did not consider Plaintiff's recovery time from anxiety attacks and hospital visits. Docket No. 26, p. 25. However, the ALJ does address the "limiting effects of these symptoms" and found these "effects" to be inconsistent with and outweighed by other medical evidence. TR 23. In the proceeding paragraphs, the ALJ cites to more than a dozen pieces of evidence in the record that include treatment records, hospital records, and treating professional opinions. *Id.* The Federal regulations do not require the ALJ to be more elaborate in crafting her analysis. *Gooch,* 833 F.2d at 592.

As has been demonstrated in Plaintiff's first claim of error that the ALJ lacked substantial evidence, the ALJ in the instant action specifically articulated her findings of fact, and, using the information in the record, provided the rationale for her decision. TR 16-28. The ALJ therefore complied with the Regulations; Plaintiff's argument fails.

### 4.  Weight Accorded to Opinion of Plaintiff's Treating Physician and Therapist

Plaintiff maintains that the ALJ ignored Dr. John's opinion (Docket No. 26, p. 21) and did not give Therapist Grosch's opinion enough weight (*Id.* at 18-21). Plaintiff contends that the ALJ erred in ignoring Dr. John's opinion because the ALJ may not rely on her lay assessment of the

20

medical record. *Id*. at 22. Further, Plaintiff argues that the ALJ was not justified in ignoring Therapist Grosch's opinion on grounds that the opinion did not use vocationally relevant terms. *Id*. at 18. Plaintiff also contends that the ALJ's analysis of substance abuse is speculative. *Id*. at 19. Moreover, Plaintiff argues that the ALJ did not provide a legally sufficient or factually accurate reason for discrediting Therapist Grosch's opinion as internally and externally inconsistent. *Id*. at 19-21.

With respect to Dr. John, Defendant responds that Dr. John's opinion is not persuasive because the opinion pertains to an issue reserved to the Commissioner. Docket No. 27, p. 5. Likewise, Defendant responds that Therapist Grosch's assessment was adversely impacted by inconsistent evidence of whether Plaintiff had issues with substance abuse. *Id*. at 6. Defendant notes inconsistencies between Therapist Grosch's opinion and Plaintiff's subjective valuation of Plaintiff's ability to use public transit. *Id.* at 7. Defendant also argues that Therapist Grosch's opinion contains inconsistencies regarding Plaintiff's intact memory and though process. *Id*.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his/her application after March 27, 2017. TR 423. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an

application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

**(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .

**(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior

22

administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

**(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

23

**(iii)  Purpose of the treatment relationship.**  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv)  Extent of the treatment relationship.**  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v)  Examining relationship.**  A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4)  Specialization.**  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5)  Other factors.**  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d)  Evidence from nonmedical sources.**  We are not required to articulate how we considered evidence from nonmedical sources using the requirements in _paragraphs (a)-(c)_ in this section.

20 C.F.R. § 404.1520c.

On January 28, 2019, Dr. John provided a treating source statement letter regarding Plaintiff which stated as follows, "[Plaintiff] has multiple disabling symptoms and is due to undergo electro-psychological studies. Until this is complete it is reasonable to afford her disability. She is clearly disabled by her symptoms but without clear cause for them." TR 1503.

When discussing Dr. John's letter, the ALJ stated, "The functional assessment has not been completed, but Dr. John stated the claimant was 'clearly disabled' and that she should get disability until further testing." TR 25.

Ultimately, the ALJ discounted Dr. John's opinion, stating, "These opinions are not persuasive as this was not a formal functional assessment and proffers an opinion reserved for the commissioner of the Social Security Administration." *Id*.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404.1520c(a).

The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). Dr. John's Medical Assessment concludes that Plaintiff is disabled, without addressing any evidence. TR 1503. Specifically, Dr. John failed to provide evidence by not completing questions 1-30 on the Medical Assessment form. TR 1502-03. While the ALJ was not persuaded by this evidence, the ALJ did not ignore Dr. John's opinion. TR 25.

The medical record also contains treatment notes by Therapist Sharon Grosch of Grosch Counseling Center. TR 1504-06, 1910-30, 1979-82. The Regulations provide that the ALJ may properly:

use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -

(1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.1513(d). Plaintiff contends that Therapist Grosch's evidence "supports and is consistent with Plaintiff's description of debilitating symptoms." Docket No. 26, p. 25. Defendant counters that the ALJ properly found Therapist Grosch's opinion to be unsupported by Therapist Grosch's own findings and inconsistent with other evidence. Docket No. 27, p. 6.

Therapist Grosch's opinion was properly considered by the ALJ, and the ALJ cited substantial evidence in determining that Therapist Grosch's opinion is inconsistent and unsupported. TR 25. The ALJ points to discrepancies in Therapist Grosch's use of vocational terms. TR 25, 1505. Further, the ALJ highlights that, although Therapist Grosch's opinions show that Plaintiff denies substance abuse, there is evidence that Plaintiff had issues with substance abuse. TR 25, 231, 1910-30, 1979-82. Likewise, the ALJ notes that Therapist Grosch provides only one instance of an objective examination beyond Plaintiff's HPI and alleged reports of symptoms and life stressors.[6] TR 25, 1910-30. Finally, Therapist Grosch's examination conflicts with Plaintiff's testimony of Plaintiff's ability to take public transportation. TR 26. The ALJ's findings illustrate that the ALJ considered Therapist Grosch's opinion and determined that the opinion weighed against Plaintiff. TR 25-26. As noted above, this Court may not substitute its own

---

[6] In Defendant's brief, Defendant shows two other instances of objective findings in Therapist Grosch's record. However, Defendant notes that these other objective findings are still inconsistent with other evidence in the record. Docket No. 27, p. 7.

factual findings.

Moreover, an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). Here, the ALJ incorporated the opinions of state agency consultants Thomas Thrush, M.D., Deborah Webster-Clair, M.D., Robert Paul Ph.D., and Norma Calway-Fagen, Ph.D. TR 135-54, 155-74, 179-203, 204-28. After examining Plaintiff's medical records, each of these consultants found that Plaintiff was "Not Disabled." TR 154, 174, 202, 227. Although the ALJ was not fully persuaded by these findings, the findings, in conjunction with other evidence in the record, do provide the ALJ with "substantial evidence" to support her finding that Plaintiff was not disabled. TR 27.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**